# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS CEBALLOS, | CV F   03 5801 OWW SMS P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 29) |
| FOUCH, et. al., | |
| Defendants. | |

Jesus Ceballos ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff filed the instant action on June 9, 2003.  On June 30, 2003, the Court issued an Order dismissing the Complaint with leave to amend.  Plaintiff was given the option of either filing an Amended Complaint or proceeding with the cognizable Eighth Amendment claim against Defendants Fouch and Flippin only.

On July 28, 2003, Plaintiff filed a Notice of his intent to proceed on the Eighth Amendment claim against Defendants Fouch and Flippin.  The Court issued Findings and

1

Recommendations to dismiss the remaining claims and defendants on September 24, 2003, and the parties were granted thirty days to file any objections. (Doc. 13.)

On January 12, 2004, Defendants Flippin and Fouch waived service of the Complaint and filed a formal Answer on January 20, 2004. (Docs. 19, 21, 22.) The Court issued a Discovery/Scheduling Order on February 20, 2004, and on January 14, 2005, the Defendants filed the instant Motion for Summary Judgment. (Doc. 23, 29.) Plaintiff did not Oppose the Motion for Summary Judgment.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Summary Judgment Motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

### III. UNDISPUTED FACTS[1]

    A. Plaintiff was a California prisoner at the California Substance Abuse Treatment Facility (CSATF), at all times relevant to the claims at issue in this action.

    B. Defendant Fouch was a Correctional Officer at CSATF at all times relevant to the matters at issue in this action.

    C. Defendant Flippin was a Correctional Officer at CSATF at all times relevant to the matters at issue in this action.

    D. On March 5, 2002, at approximately 6:45 p.m., Defendant Fouch escorted Plaintiff to Housing Unit C-2 to inform the "Bulldog" inmate population of a change in the visiting procedures during lockdowns.

    E. Plaintiff, who is also a Bulldog, was escorted to Housing Unit C-2 for the purpose of discussing the possibility of resuming the visiting program with the other "Bulldogs."

    F. Plaintiff's wrists were handcuffed in front of him for the escort.

    G. Upon arrival into the housing unit rotunda, Plaintiff began complaining about wearing the handcuffs and requested that they be removed.

    H. Defendant Flippin, who was the Housing Unit C-2 floor officer, explained to Plaintiff that the "Bulldogs" were currently on lockdown status and handcuffs were required.

    I. At some point in the conversation, Plaintiff refused to go anywhere until he spoke with the Sergeant.

    J. A personal alarm was activated. Responding staff took custody of Plaintiff and immediately escorted him to the Facility C clinic for medical examination without further incident.

---

[1] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate Statement of Disputed facts. Local Rule 56-260(b). Therefore, the Court compiled the instant Statement of Undisputed Facts from Defendants' Statement of Undisputed Facts and Plaintiff's verified Complaint and Opposition. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified Complaints and Oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff neither submitted his own Statement of Disputed facts nor addressed Defendants' Statement of Undisputed Facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Complaint and Opposition are not contradictory.

K. At approximately 6:50 p.m., Medical Technical Assistant (MTA) Stroud, responded to the alarm in Housing Unit C-2 and saw that Plaintiff was being escorted out of the building. Plaintiff was escorted out of the medical clinic where MTA Stroud performed a physical examination of Plaintiff and completed a CDC 7219, Report of Unusual Occurrence.

L. According to the CDC 7219 and Body Sheet, Plaintiff sustained the following injuries: a contusion at the back of the head and a small laceration with a contusion at the right eyebrow. The examination and reports were completed at 7:00 p.m.

M. On the CDC 7219, under the section entitled "BRIEF RESUME IN PATIENTS WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE," MTA Stroud wrote in quotations "I have a bump on my head [and] above my eye."

N. Plaintiff refused treatment for the small cut above his eye and was returned to custody.

O. The next day, at about 1:40 p.m., Plaintiff was seen by Registered Nurse Ruff. On the CDC 7219 under the Section entitled "BRIEF RESUME IN PATIENT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE," Nurse Ruff wrote in quotations "I want you to see my eye and head."

P. Nurse Ruff noted that Plaintiff was alert and with no complaints of pain or discomfort and conducted an assessment and unclothed body check of Plaintiff. Nurse Ruff noted Plaintiff's injuries which consisted of: (1) discolored upper [right] eyelid, no swelling or redness noted to the site of right eye no drainage; (2) superficial abrasion corner of upper [right] eyelid; (3) reddened "abrased" area to [right] side of back of neck; and (4) quarter size contusion to top of heard [right] side. Plaintiff was returned to custody.

Q. On March 12, 2002, Plaintiff was issued a Rules Violation Report for Battery on a Peace Officer.

R. On June 27, 2002, Plaintiff was found guilty of the lesser offense of Willfully

Resisting a Peace Officer in the Performance of Duty.

## IV. ANALYSIS

### A. Summary of Complaint

Plaintiff alleges that on March 5, 2002, while the institution was on lockdown status, he was ordered out of his cell by Correctional Officer Fouch for the purpose of escorting him to another building to discuss "visiting status." Plaintiff was handcuffed with his hands in front of his body versus behind his back. At some point, Plaintiff indicated that he did not want to be handcuffed but was informed that the handcuffs would remain on. Plaintiff then became hostile about the handcuffs and when staff tried to escort him back to his building, a scuffle ensued. Plaintiff alleges that Defendant Flippin struck him twice to the side of his head with his left elbow. At some point, Plaintiff refused to go anywhere until he first spoke with the Sergeant. Plaintiff argues that Defendant Fouch, with both hands, slammed him into a concrete wall, grabbed his face and banged his head into the wall three or four times. Plaintiff claims that Defendant Fouch then slammed him to the floor and with one knee on Plaintiff's back, proceeded to bang his face into the floor approximately three or four times, until Plaintiff's eye was busted open.

### B. Claims for Relief

Plaintiff alleges that the forced used by Defendants Fouch and Flippin was excessive and in violation of the Eighth Amendment.

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). When a prison security measure is undertaken in response to a incident as in this case, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992).

Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986). Other factors to be considered are the

extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. at 321. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, *supra* at 319; see also, Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1970).

In this case, the evidence provided by Defendants show that on March 5, 2002, while handcuffed (with arms in front) and being escorted to another location, Plaintiff requested that Defendant Flippin remove his handcuffs. When Defendant Flippin refused, Plaintiff became belligerent about having to wear handcuffs. Defendant Flippin then placed his hand on Plaintiff's elbow in an attempt to escort him back to his building when Plaintiff pulled away, said refused to go until he spoke with the Sergeant. Defendant Flippin repeated the gesture and Plaintiff again pulled away from him. When Defendant Fouch approached and ordered Plaintiff back to the building, Plaintiff lunged forward at Fouch putting his chest to Fouch's. Fouch responded by pushing Plaintiff back away from him and towards the wall. Fouch then grabbed Plaintiff by his forearm, ordered him to the "get down," and forced Plaintiff to the ground in a prone position. A personal alarm sounded and staff came to Defendant's Fouch and Flippin's aid and escorted Plaintiff to the medical clinic. Plaintiff was later issued and found guilty of a Rules Violation Report for Willfully Resisting a Peace Officer in the Performance of Duty.

Defendants also provide evidence that Plaintiff suffered only minor injuries from ths incident. MTA Stroud reported that Plaintiff suffered a small contusion to the back of his head and a small laceration or abrasion to the right eyebrow. Plaintiff indicated to MTA Stroud that he had only a "bump on my head [and] above my eye" and refused treatment. The next day, Nurse Ruff examined Plaintiff and noted some discoloration to the right eye but no swelling,

redness or drainage.  Nurse Ruff further noted a superficial abrasion to the right eyebrow and a small contusion on Plaintiff's head.

Based on the above, the Court finds Defendants have met their initial burden of informing the Court of the basis of the motion and identifying those portions of the record believed to demonstrate the absence of a genuine issue of material fact.  Accordingly, the burden shifts to Plaintiff to demonstrate that a genuine issue of material fact exists.  See, Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff did not oppose the Motion for Summary Judgment.  However, a verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e).

In the Complaint, Plaintiff concedes that the institution was on lockdown when he was handcuffed and that he was handcuffed with his hands in front of him.  (Complaint at 2.) Plaintiff further concedes that he requested to be uncuffed.  Id. at 3.  However, Plaintiff alleges that Defendants Fouch and Flippin began hitting him for no apparent reason.  Although it is undisputed that some physical altercation occurred and that Plaintiff suffered injury, the need for the application of force and the relationship between the need and the amount of force used are facts that are clearly in dispute.  Accordingly, the Court finds that there exists a genuine issue of material fact warranting trial in this case.

**V. CONCLUSION AND RECOMMENDATION**

The Court RECOMMENDS that the Motion for Summary Judgment against Defendants Fouch and Flippin be DENIED and the matter be referred back to the undersigned for further proceedings.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States

District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 13, 2005**             /s/ Sandra M. Snyder
icido3                                 UNITED STATES MAGISTRATE JUDGE